UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS THEODORE DIXON,

   Petitioner,

v.           CASE NO. 10-cv-12527
             HONORABLE JOHN CORBETT O'MEARA
BLAINE LaFLER,

   Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Thomas Theodore Dixon has filed a *pro se* petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions for murder in the second degree and possession of a firearm during the commission of a felony (felony firearm). Petitioner contends that (1) the prosecutor engaged in selective prosecution and overcharged him, (2) the trial court abused its discretion by permitting the prosecutor to establish the factual basis for his plea, (3) trial counsel was ineffective, and (4) the offense variables of the Michigan sentencing guidelines were scored incorrectly. The Court finds no merit in Petitioner's claims. Therefore, the habeas petition will be denied.

**I. Background**

  **A. The Charges, Plea, and Direct Appeal**

Petitioner was charged in Wayne County, Michigan with first-degree

(premeditated) murder, assault with intent to commit murder, and felony firearm. The charges arose from allegations that Petitioner shot two men who were seated in a car on Eaton Street in Detroit on January 8, 2003. The man in the driver's seat survived the shooting, but the man in the passenger seat, Willie Reed, died from two gunshot wounds to his back. Two years later, an informant notified the police that Petitioner was responsible for the shootings, and on August 2, 2005, Petitioner was arrested. He subsequently admitted to a detective that he fired six gunshots at the car where Reed was seated on January 8, 2003.

On January 11, 2006, Petitioner pleaded guilty to second-degree murder, Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b. He also agreed not to challenge the admissibility of his confession. In return for Petitioner's plea, the prosecutor dismissed the first-degree murder and assault counts. The parties and the trial court agreed that the sentence would be two years for the felony firearm conviction, followed by eighteen to thirty years for the murder conviction. On February 13, 2006, the trial court sentenced Petitioner pursuant to the plea and sentencing bargain.

On appeal from his convictions, Petitioner argued that trial counsel was ineffective for failing to challenge the scoring of prior record variable two of the Michigan sentencing guidelines. The Michigan Court of Appeals denied leave to appeal for lack of merit in the ground presented. *See People v. Dixon*, No. 270126 (Mich. Ct. App. June 12, 2006).

Petitioner raised the same issue and two additional sentencing issues in the Michigan Supreme Court. On October 31, 2006, the state supreme court denied leave

to appeal because it was not persuaded to review the issues. *See People v. Dixon*, 477 Mich. 917; 722 N.W.2d 874 (2006) (table).

### B. The Post-Judgment Motion and Collateral Appeal

Petitioner raised his habeas claims in a motion for relief from judgment, which alleged (1) selective prosecution and insufficient evidence, (2) improper plea proceeding, (3) ineffective assistance of counsel, and (4) invalid sentence.[1] The trial court found no merit in any of the claims and denied Petitioner's motion. The court declined to analyze claim two (improper plea proceeding) and claim four (invalid sentence). The court addressed the other claims and concluded that Petitioner had made a sufficient factual basis for his plea and that defense counsel was not ineffective. The trial court also stated that Petitioner's plea was voluntarily, knowingly, and understandingly made and that his sentence was not invalid.

Petitioner appealed the trial court's ruling, but the Michigan Court of Appeals denied leave to appeal because, in its opinion, Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Dixon*, No. 292732 (Mich. Ct. App. Oct. 30, 2009). On May 25, 2010, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Dixon*, 486 Mich. 927; 781 N.W.2d 814 (2010) (table).

### C. The Habeas Petition and Responsive Pleading

Petitioner signed and dated his habeas corpus petition on June 21, 2010. His

---

[1] Petitioner signed the motion on December 17, 2007, but his cover letter to the state trial court is dated February 24, 2008, and the state court docket indicates that the motion was filed on February 25, 2008.

3

grounds for relief, as set forth in the supporting brief, read as follows:

> I. Constitutional error occurred under the 14th amendment for violation of equal protection of the law when the defendant experience[d] a direct form of selective prosecution when the prosecutor over charge[d] the accuse[d] absent the elements and evidence to support the charge.
>
> II. Constitutional error occurred when the defendant experienced abuse of discretion commenced of the trial court for allowing the prosecutor to conduct the investigation for the plea proceedings when this obligation solely resides with the judge presiding over the case.
>
> III. Constitutional error occurred under the 6th Amendment when trial counsel['s] actions manifest gross negligence and a willful and wanton disregard to challenge the averments presented, which deprive[d] the defendant of equal protection and due process of law.
>
> IV. Constitutional error occurred under the 14th amendment violation for due process and equal protection of the law when the offense variable scoring was inappropriately applied, which effected the defendant to a more sever[e] sentencing guidelines scoring.

Respondent argues in an answer to the habeas petition that the petition is time-barred if the Court finds that Petitioner's motion for relief from judgment was filed on February 25, 2008, when the trial court received it. Respondent also argues that Petitioner's claims are procedurally defaulted because he did not raise them on direct appeal and has not shown "good cause" for his error or "actual prejudice" from the alleged irregularities. Finally, Respondent argues that Petitioner's claims lack merit for the reasons given by the trial court.

The habeas statute of limitations is not a jurisdictional defense, *Holland v. Florida*, __ U.S. __, __, 130 S. Ct. 2549, 2560 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)), and procedural default also is not a jurisdictional limitation.

*Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010). Thus, there is no need to determine whether Petitioner's claims are procedurally defaulted or barred by the statute of limitations. The Court will proceed to address Petitioner's claims on their merits, using the following standard of review.

## II. Standard of Review

State prisoners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[W]here factual findings are challenged, the habeas

petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). To obtain a writ of habeas corpus from a federal court, a petitioner must show that the state court's decision "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Discussion

#### A. The Murder Charge

##### 1. Selective Prosecution

The first habeas claim alleges that the prosecutor engaged in selective prosecution by charging Petitioner with murder. Petitioner asserts that there was no evidence of malice to support a charge of first- or second-degree murder.

The Supreme Court has stated that,

> although prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints. In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.

*Wayte v. United States*, 470 U.S. 598, 608 (1985) (quotation marks and citations

omitted).

Petitioner has not demonstrated that the decision to charge him with murder was based on his race or religion, and although he maintains that he was improperly charged with murder, the decision to charge him with murder was not arbitrary. *See infra*, section III.A.3. Thus, Petitioner has no right to relief on the basis of his selective-prosecution claim.

### 2. Sufficiency of the Factual Basis for Petitioner's Plea

To the extent that Petitioner is challenging the factual basis for his plea, his claim lacks merit because "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993)). Therefore,

> when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*Broce*, 488 U.S. at 569.

Petitioner was represented by counsel at his plea, and the record indicates that

7

his plea was voluntary, knowing, and intelligent. Therefore, Petitioner's challenge to the factual basis for his plea is not cognizable on habeas corpus review.

### 3. Sufficiency of the Evidence to Support the Murder Charge

Petitioner also contends that there was no evidence to support the prosecutor's decision to charge him with first-degree, premeditated murder or even second-degree murder. He claims that there was no evidence of malice, which is an element of murder, and that he is guilty of manslaughter at most.

The elements of premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142, 151; 656 N.W.2d 835, 841 (2002) (quoting Mich. Comp. Laws § 750.316(1)(a)). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329-30; 187 N.W.2d 434, 449 (1971) (internal and end footnotes omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *Id.*, 31 Mich. App. at 330; 187 N.W.2d at 449.

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v. Smith*, 478 Mich. 64, 70; 731 N.W.2d 411, 414-15 (2007) (citing *People v. Goecke*, 457 Mich. 442, 464; 579 N.W.2d 868, 878 (1998)). Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the

likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich. at 464; 579 N.W.2d at 878 (citing *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304, 326 (1980)).

Testimony at the preliminary examination established that the murder victim, Willie Reed, fired a gun at Petitioner in the past and that Reed had been threatening to shoot Petitioner again. There were specific threats on January 8, 2003, when Petitioner was standing outside. Reed got out of a car and said to Petitioner, "Bitch, I haven't forgot about you, and I'm coming back to get you." Later that same day, Reed pointed a gun at Petitioner and said, "See, bitch, I could get you now if I wanted to, but I'm going to holla (sic) at you." (Tr. Oct. 5, 2005, 40, 43, 95.)

Under the circumstances, Petitioner appears to have had a legitimate basis for fearing Reed. The record, however, indicates that, after Reed threatened Petitioner the last time, Petitioner kept walking, but said to himself that he was going to have to take care of business if he saw Reed again. Later that day, Petitioner was riding down Eaton Street where he saw Reed sitting in a car. Petitioner then parked his own car and walked up Eaton Street to where he had seen Reed. As he got closer to the car where Reed was seated, Petitioner ran toward the car and fired six gunshots in Reed's direction. A police officer who responded to the crime scene testified at the preliminary examination that the victims' car was "shot up" and that there was no weapon in the car. (*Id.* at 51, 55, 95-96.)

Petitioner's acts of parking his car, walking toward the victims' car, and shooting at the victims were deliberate and reasoned acts. There was ample time between Reed's threatening behavior and the shooting for Petitioner to contemplate his actions,

9

undisturbed by the threat of imminent harm. The shooting was intentional, and Petitioner's own admission to the police – that he had decided to take care of business if he saw Reed again – demonstrates that he thought about what he was going to do beforehand. Therefore, the evidence was sufficient to justify the first-degree murder charge, as well as the second-degree murder charge, which did not require proof of premeditation and deliberation or even an intent to kill. Petitioner has no right to relief on the basis of his challenge to the sufficiency of the evidence.

### B. The Plea

The second habeas claim alleges that the trial court abused its discretion by allowing the prosecutor to question Petitioner during the plea proceeding on January 11, 2006. Petitioner contends that the trial court was obligated by statute to conduct the colloquy with him.

This claim lacks merit because it is based on Mich. Comp. Laws § 768.35, which states that,

> [w]henever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence.

"A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Landrum v. Mitchell*, 625 F.3d at 913 ("Issues of state law cannot form the basis for *habeas* relief."), *petition for cert. filed*, No. 10-9911 (U.S. Apr. 4, 2011). Furthermore, the prosecutor merely assisted the trial court in establishing a factual basis for

10

Petitioner's plea. The trial court conducted the colloquy on the charges, the maximum penalties for the charged crimes, the terms of the plea bargain, and the rights that Petitioner was waiving by pleading guilty. The trial court also asked Petitioner whether he understood the plea agreement and the proceedings, whether anyone had promised him anything other than what was discussed in court, and whether anyone had threatened him to induce him to plead guilty. Petitioner then assured the court that he was willing and ready to plead guilty. (Tr. Jan. 11, 2006, at 6-12.) Because Petitioner has not shown that the prosecutor's participation in the plea colloquy deprived him of any rights under the federal Constitution, he is not entitled to relief on the basis of his second claim.

### C.  Trial Counsel

The third habeas claim alleges ineffective assistance of trial counsel. Petitioner appears to be saying that trial counsel failed to challenge the murder charge and argue that the evidence supported a charge of manslaughter. Petitioner also alleges that trial counsel was ineffective for failing to challenge the scoring of the sentencing guidelines.

#### 1.  Clearly Established Federal Law

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In guilty plea cases, the "performance" prong requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). The "prejudice" prong "focuses on whether

counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

### 2. Trial Counsel's Performance in Connection with the Plea

The contention that trial counsel failed to challenge the facts supporting the murder charge is belied by the record. At the preliminary examination, trial counsel cross-examined the witnesses and objected to the prosecutor's motion to bind Petitioner over to circuit court on a charge of first-degree murder. Trial counsel argued that the evidence made out a compelling case for self defense and that, if the district court nevertheless decided to transfer jurisdiction to circuit court, the proper charge was manslaughter, not first-degree murder. (Tr. Oct. 5, 2005, at 99-101.)[2]

---

[2] The state district court rejected trial counsel's argument, and the evidence supported the decision not to reduce the murder charge to voluntary or involuntary manslaughter. Involuntary manslaughter is "'the killing of another without malice and unintentionally . . . .'" *People v. Herron*, 464 Mich. 593, 604; 628 N.W.2d 528, 535 (2001) (quoting *People v. Ryczek* 224 Mich. 106, 110; 194 N.W. 609, 611 (1923)). Petitioner's confession established that the shooting was intentional. Therefore, involuntary manslaughter was not an appropriate charge.

Voluntary manslaughter is an intentional killing, but it applies only when the killing was "committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control . . . ." *People v. Mendoza*, 468 Mich. 527, 535; 664 N.W.2d 685, 690 (2003) (quoting *Maher v. People,* 10 Mich. 212, 219 (1862)). It is "the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition." *Id.* (quoting *Maher*, 10 Mich. at 219).

The record does not support Petitioner's contention that the shooting was the result of temporary excitement. Enough time elapsed between the provocation (Reed's threatening behavior) and the shooting for Petitioner to cool down and become rational.

Although trial counsel was unable to convince the state district court to reduce the murder charge to manslaughter, he negotiated a favorable plea agreement for Petitioner at the circuit court level. He was successful in having the first count reduced from first-degree murder, which carries a sentence of life imprisonment without the possibility of parole, to second-degree murder, which carries a maximum penalty of life imprisonment, but with the possibility of parole. *See People v. Wesley*, 421 Mich. 375, 412; 365 N.W.2d 692, 709 (1984). And even though the prosecutor initially offered to have Petitioner plead guilty to second-degree murder in exchange for a sentence of twenty to thirty years, trial counsel successfully counter-offered. The prosecutor agreed to the counter-offer, which called for a sentence of eighteen to thirty years for the murder conviction. (Tr. Jan. 11, 2006, at 4.)

Given the strength of the evidence against Petitioner and the favorable plea agreement negotiated by trial counsel, the Court finds that trial counsel's performance was not deficient. Petitioner, moreover, has failed to satisfy the prejudice prong of *Strickland* by alleging that, but for counsel's alleged errors, he would have gone to trial rather than plead guilty.

### 3. Defense Counsel and the Scoring of the Offense Variables

Petitioner alleges that trial counsel should have objected to the scoring of the sentencing guidelines, but the prosecutor stated at sentencing that, technically, the guidelines did not apply because the parties had agreed to a sentence. (Tr. Feb. 13, 2006, at 6.) "Generally, a defendant who voluntarily and understandingly entered into a

---

Therefore, voluntary manslaughter was not an appropriate charge.

plea agreement that included a specific sentence waives appellate review of that sentence." *People v. Billings*, 283 Mich. App. 538, 500; 770 N.W.2d 893, 900 (2009) (citing *People v. Wiley*, 472 Mich. 153, 154; 693 N.W.2d 800, 800 (Mich. 2005)).

Petitioner agreed to the sentence he received as part of the plea bargain. Therefore, trial counsel was not ineffective for failing to object to the scoring of the sentencing guidelines. Even if Petitioner did not waive a challenge to the guidelines score by agreeing to his sentence, the Court finds for the following reasons that trial counsel's failure to challenge the sentencing guidelines score did not amount to ineffective assistance.

### a.  Offense Variable Six

Petitioner contends that offense variable six (intent to kill or injure another individual) was incorrectly scored fifty points for a premeditated murder. Petitioner alleges that the score should have been ten points for a killing committed "in an extreme emotional state caused by an adequate provocation . . . ." Mich. Comp. Laws § 777.36(1)(c).

There was insufficient evidence that the killing was committed in an extreme emotional state. Instead, the facts suggest that Petitioner contemplated his conduct and acted deliberately. Therefore, trial counsel was not ineffective for failing to challenge the scoring of offense variable six.

### b.  Offense Variable Nine

Petitioner claims next that offense variable nine (number of victims), should have been scored zero rather than ten points for two or more victims because the charge against the second victim was dismissed as part of the plea agreement. This claim

lacks merit because

> a sentencing court is allowed to consider a defendant's admissions and even separate criminal activity for which no conviction resulted, provided the defendant is given an opportunity . . . to refute the facts or charges. Consistent with this principle, the sentencing guidelines' instructions direct the trial court to consider admitted or proven facts in calculating the guidelines score even though the facts are inconsistent with the offense for which the defendant is convicted . . . .

*People v. Wiggins*, 151 Mich. App. 622, 626; 390 N.W.2d 740, 742 (1986) (internal citation omitted).

Petitioner admitted in his statement to the police and at his plea that he knew there was a second person in the car with Willie Reed when he fired at the car. And, at the sentencing, he had no objections to the accuracy of the facts in the presentence report. The trial court therefore did not err in assessing points for two victims.

### c. Offense Variable Seventeen

Petitioner's final allegation about trial counsel and the sentencing guidelines is that the offense variable seventeen (degree of negligence exhibited), was improperly scored at ten points for "wanton or reckless disregard for the life or property of another person." Mich. Comp. Laws § 777.47(1)(a). Petitioner also received points under offense variable six, and the statute prohibits a score of ten points for offense variable seventeen if points were given for offense variable six. *See* Mich. Comp. Laws § 777.47(2).

Even if the trial court erroneously scored ten points for offense variable seventeen, the statute does not prohibit a score of five points if the offender "failed to show the degree of care that a person of ordinary prudence in a similar situation would have shown." Mich. Comp. Law § 777.47(1)(b). Petitioner did not show ordinary

15

prudence on the day of the crime. Therefore, he could have been scored five points for offense variable seventeen, and he has not alleged that a difference of five points in one offense variable would have altered the sentencing guidelines range. When a reduction in the calculation of one or more offense variables would not alter the total offense variable score so as to change the ultimate guidelines range, any error in the calculation is harmless. *People v. Johnson*, 202 Mich. App. 281, 290; 508 N.W.2d 509, 513 (1993) (citing *People v. Ratkov* (after remand), 201 Mich. App. 123, 127; 505 N.W.2d 886, 888 (1993)).

In conclusion, Petitioner has not established that the calculation of his sentencing guidelines was both inaccurate and prejudicial. Moreover, he claimed at both his plea and sentencing that he was satisfied with his attorney. (Tr. Jan. 11, 2006, at 11; Tr. Feb. 13, 2006, at 4-5.) The evidence against him was substantial, and defense counsel negotiated a favorable sentence. The Court therefore concludes that trial counsel's failure to object to the scoring of offense variables six, nine, and seventeen did not amount to deficient performance and the alleged deficiencies did not prejudice Petitioner.

**D.  The Sentencing Guidelines**

The fourth and final claim raises the same issues about the scoring of offense variables six, nine, and seventeen, but Petitioner couches the claim in terms of trial court error. He asserts that the trial court should have give him ten points for offense variable six and no points for offense variables nine and seventeen.

Petitioner was entitled to challenge his trial attorney's failure to object to the scoring of the sentencing guidelines, but his challenge to the trial court's "alleged

misinterpretation of state sentencing guidelines . . . is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (citing *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991), and *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. at 41, and *Rose v. Hodges*, 423 U.S. 19, 21-23 (1975) (*per curiam*)). Even if Petitioner's claim were cognizable on habeas review, there was no error in the calculation of offense variables six and nine, and the alleged error in calculating offense variable seventeen appears to have been harmless. *See supra*, section III.C.3.

## IV. Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Accordingly, the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

The Court **DECLINES** to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong, nor conclude that the issues deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner nevertheless may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

                                                    s/John Corbett O'Meara
                                                    United States District Judge

Date:  July 1, 2011




      I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 1, 2011, using the ECF system and/or ordinary mail.


                                                s/William Barkholz
                                                Case Manager